UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HEIDI KIM,

               Plaintiff,

    v.

NANCY BERRYHILL,

               Defendant.

Case No. 4:17-cv-01435-KAW

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 12, 15

      Plaintiff Heidi Kim ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for benefits or further proceedings.

      Pending before the Court is Plaintiff's motion for summary judgment (Dkt. No. 12) and Defendant's cross-motion for summary judgment (Dkt. No. 15). Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I.    BACKGROUND

      On October 15, 2013, Plaintiff applied for Title II Disability Insurance Benefits, alleging a disability that began on May 24, 2013. (Administrative Record ("AR") 16, 65, 75, 203, 211.) Plaintiff alleged the impairment or medical condition of chronic bronchitis. (AR 18, 19, 65, 75, 203.) The Social Security Administration ("SSA") denied Plaintiff's application initially on March 19, 2014 (AR 16, 74, 87-91), with the Initial Disability Determination Explanation and Transmittal being dated March 18, 2014 (AR 65-74). The SSA then again denied Plaintiff's application upon reconsideration on April 11, 2014. (AR 16, 75-86, 93-97, 241-42.) On April 21, 2014, Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (AR 16, 100-101.)

The assigned ALJ, Mary P. Parnow, held a hearing on August 10, 2015, at which Plaintiff and Vocational Expert ("VE") Nancy A. Rynd testified. (AR 16, 53, 114, 131, 139.) Attorneys John. C. Boyden, Esq. and Rathady Long represented Plaintiff, with Mr. Long appearing at the hearing along with Plaintiff. (AR 16, 53). In this action, however, Plaintiff is *pro se*.

At the hearing, Plaintiff testified that the last job she had was doing medical billing for 2009 through 2013 at St. Joseph's Ambulance Company,[1] where the heaviest weight she had to carry was around ten pounds. (AR 54-55.) Prior to that, she did medical billing at another ambulance company from 2005 to 2008, where the heaviest weight she had to carry was the same, approximately ten pounds. (AR 55.) Before that job, she did collection billing at a collection company from 2002 through 2005, where she said she did not do any lifting. (*Id.*) Prior to 2002, or specifically from 2000 to 2002, she worked at a mental hospital as an admitting clerk and then at a medical center as a billing coder or medical coder. (AR 55-56, 61.)

Also at the hearing, Plaintiff testified that she suffered from chronic cough and coughed up mucus every day, carries a bag and paper towel(s) with her at all times, and wears a medical mask because she doesn't "want to cough in front of" people "because they are close by." (AR 56-57.) Plaintiff also testified that she would occasionally cough up blood from time to time, and also coughed up "a lot of blood" for "about three, four months," when she saw a doctor to obtain a test x-ray and get prescribed antibiotics, which had the effect of lessening the cough and mucus for two to three months before they started back up again. (AR 57-58.) Plaintiff further testified that she has never smoked but was around people who smoked when she was in her 20s, and was diagnosed with chronic obstructive pulmonary disease ("COPD") in February of 2014, which causes difficulty to her breathing every day, the difficulty ranging from heavy – which she has to use some sort of therapy to treat – to medium to mild, which causes her to sit down or lay down to rest and calm herself. (AR 58.) She also remarked that she often felt "very tired" and after taking

---

[1] Plaintiff testified that she was laid off from the St. Joseph's Ambulance Company because their "business volume" was decreasing. (AR 59.) Plaintiff also testified, upon questioning by the ALJ, that after working at the St. Joseph's Ambulance Company, she worked for a company called "Aerotek" for one day before she became "very sick" and "had to go to urgent care," thereby forcing her to leave the company. *Id.*

cough drops at bedtime every night, she woke up in the morning "very tired" and also felt "very tired" during the day as well, therefore she was "always tired." (AR 59.) Plaintiff additionally testified that she used an inhaler-based treatment designed to prevent inflammation called "Advair" two times a day, with "two puffs" each time, but using it at that rate caused the side effects of body shakes and "space[s] around [her] eyes." (AR 60.) Thus, her Doctor told her to take just one puff, twice a day of Advair, which has helped but still causes body shakes. (*Id.*)

VE Rynd also testified at the hearing about Plaintiff's previous employment in the areas of medical billing (Dictionary of Occupational Titles ("DOT") Code 214.482-018, described as sedentary work with a Specific Vocational Preparation ("SVP") of 3), accounts receivable clerk in the area of collections (DOT 216.482-010, also sedentary work with an SVP of 5), and classification clerk as a billing coder or medical coder (DOT 206.387-010, also sedentary work with an SVP of 5), and admitting clerk where she admitted patients to a hospital or medical facility (DOT 205.362-018, also sedentary work with an SVP of 4). (AR 61.) Plaintiff also described all her past positions as sedentary employment. (*Id.*)

During the hearing, the ALJ also presented VE Rynd with a hypothetical of an individual (nearly identical to Plaintiff) who is 60 at onset, currently almost 63, has a high school education, has past work as described above, who is also capable of occasionally lifting 20 pounds, frequently lifting 10 pounds, standing and walking for six hours in an eight-hour day, sitting for six hours in an eight-hour day, who further must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants, and who finally must additionally avoid concentrated exposure to hazards such as machinery and unprotected heights. (AR 62.) Based on this hypothetical, VE Rynd testified that such an individual would be able to perform "all of" Plaintiff's past work. (*Id.*)

Attorney Long also presented, to VE Rynd, a hypothetical of a person who is limited to sedentary work with no public interaction due to her chronic cough. Based on this hypothetical person, VE Rynd testified that such an individual would only be precluded from working with admitting patients (e.g. as an admitting clerk) to a hospital, but not the medical billing, the collections clerk or the classification clerk positions. (AR 62-63.)

Attorney Long further presented, to VE Rynd, another hypothetical person that was to be off task 20 percent of the workday due to fatigue, and this behavior were to continue every day. (AR 63.) Based on this hypothetical person, VE Rynd testified that such an individual would be precluded from working at all of Plaintiff's past positions.

The ALJ issued an unfavorable decision on October 22, 2015, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act from May 24, 2013 through the date of the decision. (AR 13-29, 45-55, 265.) A request for review of the ALJ's decision was filed by Plaintiff with the Appeals Council and received on November 6, 2015. (AR 7-12.) The Appeals Council denied Plaintiff's request for review on February 23, 2017. (AR 1-6.) On March 16, 2017, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

On October 4, 2017, Plaintiff filed a motion for summary judgment. (Plf.'s Mot., Dkt. No. 12.) On December 1, 2017, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 15.) On May 31, 2018, Plaintiff filed a reply brief. (Plf.'s Reply, Dkt. No. 22.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential

evaluation. *Reddick*, 157 F.3d at 721. At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante*, 262 F.3d at 953-954. The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On October 22, 2015, the ALJ issued an unfavorable decision. (AR 13-29, 45-55, 265.)

At step one, the ALJ determined that Plaintiff had not been engaged in substantial gainful activity since May 24, 2013, the alleged onset date. (AR 18.)

At step two, the ALJ identified the following severe impairment: chronic bronchitis. (*Id.*) The ALJ stated that the impairment of chronic bronchitis was severe because it significantly limited the Plaintiff's ability to perform basic work activities. (*Id.*) Moreover, the ALJ notes that even though in 2014, the Plaintiff was diagnosed with hearing loss, tinnitus, and vertigo, these

conditions caused no more than a minimal effect on the Plaintiff's ability to perform basic work activities and Plaintiff also had no apparent difficulty hearing the ALJ during the hearing. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*) The ALJ explained that Plaintiff "did not meet her burden at this step of the process" and that "[n]either she nor her representative argued that she met or equaled a Listing before or during the hearing." (*Id.*) Nonetheless, the ALJ considered all the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, including Listing 3.07, which concerns, as applicable here, "bronchiectasis, demonstrated by appropriate imaging techniques and [which] requires (a) impairment of pulmonary function due to extensive disease (evaluated under the appropriate criteria in 3.02) or (b) episodes of bronchitis requiring physician intervention, occurring at least once every 2 months or at least six times a year." (AR 19.) Upon review, however, the ALJ concluded that the medical evidence failed to support a finding that the Plaintiff's medically determined impairments were attended by clinical findings, which met or medically equaled the criteria for the listed impairment. (*Id.*) The ALJ also held that "the evidence does not support the level of impairment of pulmonary function or the frequency of physician intervention required" because the record reflected "only two doctor's visits in all of 2013 and two emergency room visits in January and July 2015." (*Id.*)

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), except that Plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand, and walk 6 hours out of an 8 hour day, and must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation, and avoid concentrated exposure to hazards, such as machinery and unprotected heights. (*Id.*) The ALJ confirmed that Plaintiff alleged an onset date of May 24, 2013, also alleged that she was unable to work due to chronic bronchitis, and described her symptoms in written submissions in connection with the ALJ's determination, to medical professionals, and at the hearing. (*Id.*) The ALJ explained that Plaintiff described her impairments as causing breathing difficulty every day, ranging from mild to severe, fatigue from breathing issues, and coughing up mucus every day.

(AR 19-20.) Plaintiff had also reported being around smoke when she was younger and being diagnosed with COPD in the last year, 2014, stating also that the COPD caused fatigue and forced her to lie down to rest. (AR 20.) Plaintiff also conveyed that she wears a mask to avoid coughing on people, but uses it as a courtesy to others, not a requirement. (*Id.*) Plaintiff also testified that she does not use oxygen or a nebulizer, but takes "one puff twice a day" of Advair. (*Id.*) She also recalled coughing up blood and needing antibiotics, which lessened the coughing and mucus for a few months. (*Id.*) Plaintiff also submitted an asthma questionnaire in which she explained that Dr. Daniel Sanchez, who she last saw in 2009, wanted her to take antibiotics every day, and when she did she felt better, but she also stopped taking the medicine because it made her sick and she couldn't afford it due to "money problem[s]." (AR 20, 216-217.)

The ALJ then concluded that the evidence of record did not support Plaintiff's assertions of dysfunction and reflected that the Plaintiff did well when taking medication as prescribed but had intermittent flare-ups when she ceased to take medication. (AR 20.) The ALJ additionally remarked that the evidence of record reflected that even when not taking medication, Plaintiff was able to engage in physical activities such as exercise. (*Id.*) The ALJ also notes that medical records reflect that Plaintiff sought emergency room care on March 12, 2012 for two weeks of productive cough; that lung x-rays dated March 26, 2012 revealed bilateral areas of scarring and bronchial thickening with bronchiectasis and underlying COPD with "no significant change"; that on March 28, 2012, she followed up for pneumonia and chest wall pain that became resolved after she took one Tylenol; and that Plaintiff reported she did not take the prescribed Mucinex and stopped taking codeine but that she experienced no night sweats, rigors or wheezing. (*Id.;* AR 316-64.) Progress notes dated June 8, 2013 and September 26, 2013 also indicate that Plaintiff had increased cough (AR 20, 270-71), and during an April 28, 2014 office visit with Dr. Melvin Donaldson, Plaintiff complained of her chronic cough but Dr. Donaldson noted that her lungs were "clear" (AR 20, 380-386).

On May 2, 2014, Plaintiff sough urgent care treatment for increased cough with green mucus and even though she had no shortness of breath and her respirations were non-labored and within normal limits, she was deemed to have bronchitis. (AR 20, 284-87.) Plaintiff also declined

"Robitussin AC and [an] inhaler" and was advised to follow up with her primary care doctor. (*Id.*) During a "new patient consult" on May 20, 2014, Dr. Charles Poon noted that Plaintiff recently underwent a course of antibiotics for cough, and she reported shortness of breath and stated that albuterol did not improve her symptoms and that she was not interested in long-acting inhalers. (*Id.*) Dr. Poon ordered testing and referred Plaintiff to pulmonary rehab. (*Id.*) On June 23, 2014, Dr. Poon had yet to confirm in Plaintiff a COPD diagnosis and indicated his desire to confirm the diagnosis of COPD with x-ray and cultures and during the visit, Plaintiff agreed to begin long-acting inhalers. (*Id.*) On November 10, 2014, Dr. Andrew Greenberg (a colleague of Dr. Poon) noted his impression that while COPD was listed as a diagnosis for Plaintiff, given the lack of Plaintiff's tobacco use, "her main diagnosis is bronchiectasis with hyperinflation." (*Id.*) Dr. Greenberg opined that the "best course of action is to facilitate secretion clearance with a flutter valve" and he gave Plaintiff a sample of Advair. (*Id.*)

In January 2015, Plaintiff established care at LifeLong Medical Care and in follow up examinations that took place in February and March of 2015, it was noted that Plaintiff's respirations were within normal limits and that she had active prescriptions for Advair, albuterol sulfate HFA, and All Day Allergy (cetirizine). (AR 21, 305-15.) On January 15, 2015, Plaintiff sought emergency care for cough with hemoptysis: her pulmonary/chest exam was within normal limits and it was also noted that she was not anemic so she did not "bleed dangerously." (AR 21, 365-79.) Lung x-rays dated January 16, 2015 revealed that bilateral peripheral linear scarring in Plaintiff's lungs increased on the left since 2012. (AR 21, 316-364.) A CT scan dated January 16, 2015 confirmed hyperinflation with bilateral scarring, diffuse bronchiectasis, and severe right middle lobe and singular volume loss with cystic and cylindrical bronchial, but no evidence of pulmonary emboli. (AR 21, 365-79.) In April 2015, Plaintiff saw Dr. Greenberg again and reported using acapella valve therapy to help with secretion clearance, having intermittent episodes of wheezing, abdomen discomfort from coughing and occasional chills and fever – yet, his impression was that Plaintiff's "COPD and bronchiectasis, were stable." (AR 21, 316-64.) On July 22, 2015, Plaintiff sought emergency care for chest heaviness, cough and dyspnea, without shortness of breath. (AR 21, 387-403.) It was noted that she was breathing comfortably, an x-ray

8

revealed severe hyperextension with bilateral scarring and bronchiectasis, apparent main pulmonary artery segment enlargement that was likely pulmonary hypertension, and no acute cardiopulmonary process. (*Id.*) It was also noted that the labs were unremarkable, the electrocardiogram ("EKG") was nonischemic, troponin was negative, but that given the history of bronchiectasis, treatment with antibiotics was appropriate. (*Id.*) She was discharged on azithromycin, the medication she reported at the hearing to decrease her symptoms. (*Id.*)

Therefore, the ALJ concluded that while the aforementioned medical evidence supported a finding that Plaintiff had "severe" impairments, the objective findings on imaging studies and the course of medical treatment do not support the Plaintiff's allegations of an inability to perform *all* work. (AR 21.) Rather, the ALJ held that the objective findings of the record support a determination that Plaintiff retains the ability to perform a range of work at the light exertional level. (*Id.*) The ALJ further found that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, but the Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible for the reasons explained in the ALJ's decision. (*Id.*) For example, the ALJ states that Plaintiff's reported activities do not support a finding of disability because although Plaintiff has described daily activities that are somewhat limited, two factors weigh against considering these allegations to be strong evidence in favor of finding Plaintiff disabled. (*Id.*) First, the allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty; and second, even assuming *arguendo* that Plaintiff's daily activities are truly as limited as asserted, it is difficult to attribute that degree of limitation to the Plaintiff's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in the ALJ's decision. (*Id.*) Thus, the ALJ concluded that overall, the other factors discussed in the decision counterbalanced the Plaintiff's reported limited daily activities. (AR 21-22.) Indeed, during Plaintiff's consultative examination with Dr. Hernandez, Plaintiff reported that she did not use any inhalers or supplemental oxygen but that she exercised daily by walking on a treadmill for 40 minutes at a time. (AR 22, 272-280.) As a result, the ALJ found that this suggested at times that Plaintiff's functioning was greater than what she reported, even without medication. (*Id.*)

1    Moreover, the ALJ notes that Plaintiff indicated she was laid off from her last position

2    instead of being terminated due to her allegedly disabling impairments. (AR 22, 202-10.) Plaintiff

3    also reported having had "this illness since 2001" (AR 22, 216-17), and that it had gotten worse,

4    but there is no evidence of a significant deterioration in the Plaintiff's medical condition since that

5    layoff. (AR 22.) Thus, the ALJ states that a reasonable inference is that the Plaintiff's impairment

6    would not prevent the performance of that job, since it was being performed adequately at the time

7    of the layoff despite a similar medical condition.

8    Next, the ALJ addressed the opinion evidence. In finding the aforementioned RFC for

9    Plaintiff, the ALJ accorded significant weight to the RFC conclusion reached by Dr. Pancho and

10   Dr. Mitgang, the physicians employed by the State Disability Determination Services who

11   determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently;

12   stand, walk, and sit for six hours in an eight-hour workday; had no postural, manipulative, visual,

13   or communicative limitations; and must avoid even moderate exposure to fumes, odors, dust,

14   gases, and poor ventilation; and must avoid concentrated exposure to hazards including machinery

15   and heights. (AR 22, 65-73, 75-85.) The ALJ concludes that the "weight of the record supports

16   these [above] opinions [from Drs. Pancho and Mitgang]" and "[a]lthough non-examining, and

17   therefore the opinions would not generally warrant more weight than that of an examining or

18   treating physicians, they deserve significant weight in this case because there exists a number of

19   other reasons to reach similar conclusions (as explained throughout [the ALJ's] decision). (AR 22.)

20   The ALJ also accorded partial weight to the opinion of consultative examiner, Dr. Manuel

21   Hernandez, M.D., who on February 26, 2014, examined Plaintiff at the request of the

22   Administration. (AR 22, 272-80.) Dr. Hernandez reviewed "two very abbreviated notes,"

23   Plaintiff's Adult Asthma Questionnaire, and took a history from Plaintiff, and after performing a

24   physical examination and pulmonary function test, Dr. Hernandez diagnosed a history of chronic

25   bronchitis with a low FEV1 (1.17), possible obstructive disorder. (*Id.*) Dr. Hernandez also

26   indicated no exertional limitations but recommended that Plaintiff avoid areas with fumes, odors,

27   dust, gases, poor ventilation, and extreme cold to avoid exacerbation of her condition. (*Id.*)

28   Therefore, the ALJ determined based on her review of the record that Plaintiff is more limited than

what Dr. Hernandez opined in that Plaintiff's ability to lift and carry is reduced by her pulmonary limitations. (*Id.*) As a result, the above RFC assessment from the ALJ was supported primarily by the opinions of Dr. Pancho and Dr. Mitgang, the objective evidence, and the longitudinal medical record. (AR 22.)

At step five, the ALJ found the Plaintiff capable of performing her past relevant work as actually and generally performed because performing that work does not require the performance of work-related activities precluded by the Plaintiff's RFC. (AR 22-23.) The ALJ stated that VE Rynd, who had reviewed Plaintiff's documented vocational background prior to the hearing and heard Plaintiff's testimony during the hearing, indicated – based upon that review – that Plaintiff worked within the last 15 years in the following occupations:

1. Medical billing clerk, DOT Code 214.482-018, a sedentary, semiskilled (SVP 3) occupation as generally performed pursuant to the DOT and as performed by the claimant;
2. Accounts Receivable Clerk, DOT Code 216.482-010, a sedentary, skilled (SVP 5) occupation as generally performed pursuant to the DOT and as performed by the claimant;
3. Classification Clerk, DOT Code 206.387-010, a sedentary, skilled (SVP 5) occupation as generally performed pursuant to the DOT and as performed by the claimant; and
4. Hospital Admitting Clerk, DOT Code 205.362-018, a sedentary, semiskilled (SVP 4) occupation as generally performed pursuant to the DOT and as performed by the claimant.

The ALJ found, based on the evidence of record, that the above-described work was past relevant work because Plaintiff performed it within 15 years of the date of the ALJ's decision on October 22, 2015, for a sufficient time to learn and provide average performance, and at the level of substantial gainful activity. (AR 23.) The ALJ also notes that at the hearing, she asked VE Rynd to assume a person with the same age, education, and work experience as Plaintiff, and a RFC as stated above, and asked VE Rynd whether that person would be able to perform the past relevant work described above. (*Id.*) VE Rynd testified that such an individual would be able to perform all of the past relevant work as actually performed by the Plaintiff and as generally performed in the regional and national economy. (*Id.*) The ALJ found VE Rynd's testimony to be well-reasoned and consistent with the underlying vocational evidence and hence accorded it high evidentiary weight. (*Id.*)

In addition, pursuant to SSR 00-4p, the ALJ also determined that VE Rynd's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (*Id.*) Accordingly, based on the above and comparing Plaintiff's RFC with the physical and mental demands of the above past relevant work, the ALJ found that Plaintiff was able to perform the above past relevant work as actually and generally performed. (*Id.*) The ALJ concludes her opinion by finding that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 24, 2013 through the date of this decision (October 22, 2015) and that based on the application for a period of disability and disability insurance benefits filed on October 15, 2013, Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. (AR 23-24.)

## IV.    DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds.  First, Plaintiff contends that the ALJ failed to consider all severe and non-severe impairments at step two, in Section 4 (AR 18-19) of the ALJ's decision.  (Plf.'s Mot. at 4-5.)  Second, Plaintiff argues that the ALJ failed to properly develop the record.  (*Id.* at 4, 6.)  Third and finally, Plaintiff asserts that the RFC (residual functional capacity), discussed in Section 5 (AR 19-22) of the ALJ's decision, is not supported by substantial evidence.  (Plf.'s Mot. at 4, 7.)

### A.    The ALJ's Consideration of All Severe & Non-Severe Impairments at Step Two

Plaintiff argues that the ALJ failed to consider all severe and non-severe impairments during the step two analysis, as covered mainly by Section 4 of the ALJ's decision (AR 18-19), and lists these severer and non-severe impairments as being primarily her "chronic bronchitis," "severe COPD [chronic obstructive pulmonary disease]" and "emphysema." (Plf.'s Mot. at 5.)  As to these impairments, Plaintiff remarks that: "I live with difficult breathing and annoying cough and cough up mucus everyday. I get chills, [become] light-headed, [experience] confusion, [get] chest pain, [experience] dizziness, [and] cough up blood [from] time to time. I have to bring up mucus from deep down inside [my] lung. So I can breathe normally, even for [a] short time. To clear the lung, I lie down flat on my back [for] about 15 to 30 minute[s] (this is the best position to bring up mucus and bring back normal breathing, even for [a] short time). I do this many time[s] everyday." (*Id.*)

United States District Court
Northern District of California

In response, Defendant states that in "reaching the RFC determination,[2] the ALJ properly explained that she considered 'all of the claimant's impairments, including impairments that are not severe'" (Def.'s Opp'n at 2; AR 17), thus, "Plaintiff's contention that she had additional severe impairments including severe COPD, emphysema, difficulties breathing, coughing, and other similar respiratory ailments is ultimately immaterial" (Def.'s Opp'n at 2). Instead, as Defendant argues, the "legally pertinent question is whether the ALJ's RFC incorporated all limitations credibly established by the record," which Defendant answers in the affirmative because the Commissioner pointed out that the bulk of Plaintiff's additional alleged impairments were respiratory in nature and closely related to the ALJ's finding of severe bronchitis (*Id.*; AR 18); the ALJ was well aware of and summarized in detail Plaintiff's alleged impairments as well as their resulting symptoms and effects (Def.'s Opp'n at 2; AR 19-20); Plaintiff's contentions simply repeat these allegations, which the ALJ has already considered (Def.'s Opp'n at 2; Plf.'s Mot. at 5); and from a functional standpoint, the ALJ gave weight to various physicians, including consultative examining physician Dr. Manuel Hernandez, who was both aware of Plaintiff's various symptom complaints and reviewed her treatment records (Def.'s Opp'n at 2; AR 22, 272-73) and also opined that Plaintiff remained functionally capable of work that avoided fumes, odors, dust, gases, and poor ventilation - limitations adopted by the ALJ (Def.'s Opp'n at 2-3; AR 276). Defendant also points out that the ALJ accorded significant weight to State agency physicians Dr. Robert Mitang and Dr. L. Pancho (Def.'s Opp'n at 3; AR 70-71, 82-84), who both underwent a detailed evaluation of the medical evidence (Def.'s Opp'n at 3; AR 69, 83) but still concluded that Plaintiff would at least be capable of performing light work activity with the avoidance of even moderate exposure to respiratory irritants (Def.'s Opp'n at 3; AR 70-71). Defendant further argues that the ALJ herself reviewed the treatment records, noting that despite Plaintiff's symptom complaints, she exhibited no chest pains, shortness of breath, or nausea (Def.'s Opp'n at 3; AR 20, 284); subsequent

---

[2] "After reviewing the evidence of record, the ALJ determined that Plaintiff's severe impairments included bronchitis, and that she would be limited to light work activity that must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation, as well as avoid concentrated exposure to hazards such as machinery or unprotected heights." (Def.'s Opp'n at 2; AR 18, 19.)

1    treatment records similarly noted normal respiratory effort and inspection (Def.'s Opp'n at 3; AR

2    21, 306, 309); and Plaintiff's treating physician, Andrew Greenberg, opined that her COPD and

3    bronchiectasis were both stable, recommended that she continue her present course of treatment,

4    and follow up in four months (Def.'s Opp'n at 3; AR 21, 319). Therefore, Defendant concludes by

5    stating Plaintiff's argument that the ALJ failed to properly consider all her impairments is without

6    merit because the ALJ's conclusions were rational, reasonable and supported by substantial

7    evidence, and based on the above opinion and longitudinal evidence, there is a strong consensus

8    that Plaintiff's impairments were managed and not debilitating, and that she remained capable of a

9    range of gainful work activity. (Def.'s Opp'n at 3.)

10   In reply, Plaintiff reiterates her argument that the ALJ failed to consider all severe and non-

11   severe impairments and repeats a listing of her impairments, but also adds citations to the

12   Administrative Record, stating: "I have chest pain almost everyday (each time, [the] pain last[s] 2-

13   3 second[s]) (AR 337, 391, 394, 395), and chills almost everyday (each time, chills last 2-3

14   second) (AR 21, 284, 319, 321), sometimes chills last 40 minutes to several hours, depend[ing] on

15   my body condition. COPD is accompanied with confusion, dizziness (AR 293, 366) sometime[s]."

16   (Plf.'s Reply at 2.)

17   On balance, the Court finds that the ALJ considered all severe and non-severe

18   impairments, both in her step two analysis (AR 18-19) and in the derivation of Plaintiff's RFC (AR

19   19-22). In fact, the ALJ stated in her opinion that in order to make the finding of an individual's

20   RFC, she "must consider *all* of the claimant's impairments, including impairments that are *not*

21   severe." (*See* AR 17, citing 20 CFR 404.1520(e) and 404.1545; SSR 96-8p) (emphasis added).

22   This approach the ALJ unquestionably followed, as the ALJ "considered all symptoms and the

23   extent to which these symptoms can reasonably be accepted as consistent with the objective

24   medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs

25   96-4p and 96-7p" and also "considered opinion evidence in accordance with the requirements of

26   20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (AR 19.) Moreover, the ALJ stated

27   that she must "follow a two-step process in which it must first be determined whether there is an

28   underlying medically determinable physical or mental impairment(s) --i.e., an impairment(s) that

14

can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms" and "[s]econd, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms have been shown, [the ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [the ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." (*Id.*)

There is no doubt that the ALJ followed the aforementioned protocol in evaluating and considering all of Plaintiff's severe and non-severe impairments. For example, the ALJ reviewed Plaintiff's disability reports (AR 202-10), an Asthma Questionnaire (AR 216-17) (including a report that she felt better after taking the antibiotics prescribed to her from Dr. Daniel Sanchez), her testimony during the hearing (AR 19-20, 53-64), medical records pertaining to follow-up visit reports, medication, a CT pulmonary angiogram, x-rays of the chest, spirometry reports from Sutter East Bay Medical Foundation, Dr. Charles Poon and Dr. Andrew Greenberg (AR 316-64) (including a report stating she was able to resolve pneumonia and chest wall pain after taking one Tylenol, another report stating that she had no night sweats, rigors, or wheezing, even after not taking the prescribed Mucinex and stopping dosages of codeine, and a report from Dr. Greenberg that her COPD and bronchiectasis "were stable"), progress notes from Dr. Joo Sock Yang (AR 270-71), medical records pertaining to a physical questionnaire, a lab report, x-rays of the chest, a mammogram report from Dr. Melvin Donaldson (AR 380-86) (including a report from Dr. Donaldson that her lungs were "clear"), a history and present illness report from Direct Urgent Care (AR 284-87), medical reports from Lifelong Medical Care (AR 305-15), ED provider notes and lab reports from Alta Bates Summit (AR 365-79) and a physical exam report, ED provided notes, lab reports, discharge instructions for bronchiectasis from Alta Bates Summit (AR 387-403) (including a report that she was discharged on azithromycin, the medication she reported at the hearing as decreasing her symptoms).

As a result, the ALJ's reasoning is supported by a thorough review of substantial evidence and a detailed consideration of *all* of Plaintiff's severe and non-severe impairments when she concludes that "the evidence of record does not support the claimant's assertions of dysfunction" (AR 20), "the claimant's reported activities do not support a finding of disability" (AR 21) and "while the medical evidence supports a finding that the claimant has 'severe' impairments, the objective findings on imaging studies and the course of medical treatment do not support the claimant's ability to perform *all* work. Rather, the objective findings of [the] record support a determination that the claimant retains the ability to perform a range of work at the light exertional level." (*Id.*) The ALJ's later conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" is also rational and supported by an in-depth consideration of *all* of Plaintiff's impairments and the medial record evidence from treating doctors as well as the opinions of Drs. Pancho and Mitgang, to which she accorded significant weight because there existed a number of other reasons to reach similar and consistent conclusions, as explained throughout her decision. (AR 21-22.) Thus, the Court finds that the ALJ clearly considered all of Plaintiff's severe and non-severe impairments in her analysis.

### B.     Whether the ALJ Properly Developed The Record

Next, Plaintiff asserts that the ALJ failed to property develop the record. (Plf.'s Mot. at 6.) In support of this argument, Plaintiff states that: "I have annoying cough, [cannot] sleep good especially after midnight to early in the morning everyday. I feel very weak, light-headed, [and] sleepy. I sleep about 3-4 hours per day. My illness require[s] plenty of rest everyday. I need [to] avoid crowd[s], I catch cold or flu or any kind of germ very eas[il]y. If I catch any virus or germ, my illness change[s] from chronic illness to acute illness. I take antibiotic treatment 2 or 3 time[s] every year for acute COPD/acute bronchiectasis/pneumonia. [The] antibiotic[s] help on [my] cough but [my] cough never go[es] away. I tried all of [the] lung inhaler[s] for shortness of breath. But it does not help on my shortness of breath. All inhaler[s] only give me side effect (blurry vision and body shaking)." (*Id.*)

In response, Defendant argues that "[t]here is simply no reasonable indication that the ALJ failed to develop the medical record or that there were any missing pieces of evidence." (Def.'s

Opp'n at 4.) As an initial matter, Defendant points out that the Plaintiff was represented by an attorney (Mr. Rathady Long) before the ALJ during the August 10, 2015 hearing, and when questioned whether he had reviewed the evidence and whether any records were missing, Mr. Long answered in the negative and affirmed that there were no outstanding records. (Def.'s Opp'n at 4; AR 51, 53.) Defendant also asserts that there were multiple pieces of medical opinion evidence sufficient for the ALJ to evaluate and reach her RFC determination, as discussed and detailed above. (Def.'s Opp'n at 4.) Finally, Defendant avers that Plaintiff's argument consists of her reciting her alleged symptoms, but she makes no actual claims that any records were missing, or what the ALJ should have done to further develop the record; thus, Plaintiff's argument is without merit and should be rejected by the Court. (*Id.*)

In reply, Plaintiff reiterates her argument that the ALJ failed to properly develop the record and repeats a listing of her symptoms but this time adds citations to the Administrative Record, stating: "I sleep about 3-4 hours because of cough (AR 321), [and] sometime[s] [I] sleep only 2 hours. Everyday I am very tired (AR 366), and sleepy (AR 272), and very weak (leg staggering) (AR 284, 389). I doze off [from] time to time everywhere and everyplace[]. I try not to doze off, when I am away from home. I stay at home most of times. [I] try not to stay out of home long hours (more than 3 hours) because of this condition." (Plf.'s Reply at 3.)

The Court finds that the ALJ properly developed the record. Plaintiff raises no claims of the record being incomplete, or actions taken by the ALJ to inadequately develop it. It appears, nonetheless, that Plaintiff is attempting to argue that the symptoms listed in her motion (Plf.'s Mot. at 6) and reply (Plf.'s Reply at 3) were not made a part of the record, or ignored by the ALJ, hence the ALJ failed to fully and properly develop the record as a result. This argument is groundless because as discussed in detail above, not only did the ALJ take into account all of the symptoms Plaintiff listed in her motion and reply, she also considered and analyzed volumes of medical evidence, reports from medical professionals and even testimony from the Plaintiff herself during the August 10, 2015 hearing - where much of the listed symptoms were reiterated (AR 53-64). Furthermore, as noted by Defendant, Plaintiff was represented by an attorney, Mr. Long, at the August 10, 2015 hearing and when asked if there was any evidence he wanted to add to the record

17

or if he and Plaintiff were still waiting for records or if there were any objections to the record, Mr. Long answered "No, Your Honor" (AR 53-54), All the records in the case (Exs. 1A-4A, 1B-14B, 1D-9D, 1E-21E and 1F-10F) were entered shortly thereafter. (AR 54.) Accordingly, the Court finds that the ALJ properly and fully developed the record here.

**C.      Whether the RFC is Supported by Substantial Evidence**

Finally, Plaintiff argues that the RFC – determined by the ALJ primarily in Section 5 (AR 19-22) of her decision – is not supported by substantial evidence. (Plf.'s Mot. at 7.)  In support of this argument, Plaintiff states that: "walking 3 or 4 block[s], [I] start to get shortness of breath. Any everyday's normal activities (such as, cooking, wash[ing] dish[es], cleaning apartment, carry[ing] grocery bag[s], blow dry[ing] my hair, etc.,) give[s] me shortness of breath. And if [I am] stressed/strained mentally or physically, [this] caus[es] shortness of breath. With these condition[s], I am sure I [cannot] give good work performance. I will be [lying] down [and] rest[ing] more than work[ing]." (*Id.*)

In response, Defendant argues that "the ALJ decision was based on a complete and properly developed record," is also "consistent with the various State agency and consultative examining physician opinions" (Def.'s Opp'n at 4; AR 16-24) and that "Plaintiff's contention once again continues her recitation of symptoms, but does not make any specific argument about the ALJ's findings" (Def.'s Opp'n at 4-5; AR 17). Defendant also avers that Plaintiff's statement that she was "sure [she] cannot give good work performance" would be construed by the Commissioner as a general challenge to the ALJ's credibility finding, and explain how the ALJ properly found Plaintiff's statements not fully supported by the record. (Def.'s Opp'n at 5.) Defendant further asserts that Congress expressly prohibits granting disability benefits based on a claimant's subjective complaints, that an ALJ cannot be required to believe every allegation of disability, or else disability benefits would be available for the asking (a result plainly contrary to the Social Security Act), and that an ALJ is required to make specific findings regarding a claimant's subjective allegations, and that these findings must be properly supported by the record and be sufficiently specific so as to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony.  (*Id.*)

Defendant then indicates three statements made by the ALJ to support its argument that substantial evidence supports the ALJ's RFC finding:

(1) the ALJ pointing out that the objective evidence "reflects that [Plaintiff] did well when taking medication as prescribed but had intermittent flare-ups when she ceased taking medication" (Def.'s Opp'n at 5-6; AR 20) and "Plaintiff's alleged symptoms cannot credibly establish disability if they were exacerbated primarily through the lack of consistent treatment adherence" (Def.'s Opp'n at 6); *see* (AR 337) (noting Plaintiff's symptoms "resolved since she took one Tylenol" and that "she did not use the Mucinex and she stopped using the Codeine"); (AR 286) (noting that Plaintiff "declines Robitussin AC and inhaler");

(2) the ALJ stating that "even when not taking medication [Plaintiff] was able to engage in physical activities such as exercise" (Def.'s Opp'n at 6; AR 20); *see* (AR 20, 272-73) (Plaintiff being admitted to consultative examiner Dr. Hernandez that though "she did not use any inhalers or supplemental oxygen," she "exercised daily by walking on a treadmill for 40 minutes at a time"; (AR 22) (the ALJ stating that Plaintiff's "functioning is greater than she has reported, even without medication"); and

(3) the ALJ noting that Plaintiff admitted "she was laid off from her last position rather than because of the allegedly disabling impairments" (Def.'s Opp'n at 6; AR 22); *see* (AR 22, 59) ("the business volume was coming down, so they had to lay me off"); (AR 204) (Plaintiff indicating that she worked for her last job with the ambulance company until May 2013); (AR 151, 203) (Plaintiff alleging that she became disabled the very same day she was laid off on May 24, 2014); (AR 22, 217) (the ALJ finding that despite having respiratory ailments since 2001, there is no evidence of a signfiiact deterioration that would suddenly prevent Plaintiff from working after she was laid off because Plaintiff's "impairment would not prevent the performance of [her past work], since it was being performed adequately at the time of the layoff").

Defendant concludes by stating that the ALJ provided sufficient and specific reasons explaining her credibility determination adequate to ensure that she did not "arbitrarily discredit" Plaintiff's complaints and even if Plaintiff understandably disagrees with the ALJ's rejection of her subjective allegations, such a disagreement does not, and cannot, result in reversible legal error.

1    (Def.'s Opp'n at 7.) Hence, Plaintiff's argument is without merit and the ALJ's decision is

2    supported by substantial evidence and free of reversible legal error. (*Id.*)

3         In reply, Plaintiff reiterates her argument that the RFC is not supported by substantial

4    evidence and refashions a list of her symptoms integrated with citations to the Administrative

5    Record, stating: "Everyday's normal activities causing difficult breathing (AR 308, 311, 319, 325,

6    331, 354). If cooking or cleaning apartment [it] take[s] 1 hour, within 1 hour, I have to lie down

7    rest 2 or 3 times (each time for 15-30 minutes). If wash[ing] dish[es] take[s] 30 minutes, within 30

8    minutes or right after [I] wash [the] dish[es], I have to lie down [and] rest, at least one time for 15-

9    30 minutes. Carrying grocery bags to my apartment door. [This] [causes] difficult breathing, I

10   have to lie down [and] rest normally for 30-45 minutes (AR 55). Sometime I have to wait for a

11   ride at the front of [the] grocery store more than 30 minutes or 1 hour or 2 hours, I get exhausted

12   by waiting long for a ride, when this happen[s], I have to lie down and rest at home [for] more

13   than 1 hour or 2 hours or 6 hours, depend[ing] on how bad I am exhausted (AR 19, 22). Whenever

14   [my] lung's airway is obstructed with mucus or uncleaned air, I get difficult breathing, so I must

15   bring up mucus as much as I can from deep down inside of lung everyday and [I] have to lie down

16   [to] rest to clear the lung even for a short time. If I don't do this everyday, my chest get[s] heavy

17   and very uncomfortable and [it becomes] hard to breath (AR 398)." (Plf.'s Reply at 4-5.)

18        In specific reply to Section C of Defendant's Opposition (Def.'s Opp'n at 4-7), Plaintiff

19   states the following:

20        For line 1 on page 6 of Defendant's Opposition stating "AR 337 (noting that her symptoms

21   'resolved since she took one Tylenol'" (Def.'s Opp'n at 6): "AR 337 (noting that her symptoms

22   "resolved since [she] took one Tylenol") is wrong. I took antibiotic[s] for pneumonia (AR 341),

23   and Tylenol for cough, but Tylenol doesn't cure cough." (Plf.'s Reply at 6.)

24        For line 13 on page 6 of Defendant's Opposition stating "exercised daily by walking on a

25   treadmill for 40 minutes at a time (AR 20, 272-73)" (Def.'s Opp'n at 6): "Exercised daily by

26   walking on a treadmill for 40 minutes at a time is wrong. I never owned [a] treadmill. I used

27   treadmill on slow speed before 3 or 4 times in a month, at that time, I did not have COPD (AR

28   22)." (Plf.'s Reply at 6.)

The Court finds that the ALJ's determination of the RFC is most certainly supported by substantial evidence. As discussed previously, the ALJ reviewed numerous medical records, reports from physicians and also testimony that the Plaintiff made during the August 10, 2015 hearing. It is important here to note that the ALJ's accordance of significant weight to the opinions of Dr. Pancho and Dr. Mitgang, who were both non-examining physicians but who provided analysis consistent with other evidence in the case and the ALJ's accordance of partial weight to the opinion of Dr. Manuel Hernandez, a consultative examining physician, was reasonable and based on specific legitimate reasons supported by the record.

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes among the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three types are classified as: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Id.* A treating physician's opinion is entitled to controlling weight if it is well-supported and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor, and, if contradicted, only for specific and legitimate reasons supported by substantial evidence. *Chater*, 81 F.3d at 830. Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31. Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Id.* at 834.

Here, the opinions of the non-examining physicians Dr. Pancho and Dr. Mitgang were properly accorded more weight than the opinion of the examining physician Dr. Hernandez because Dr. Hernandez's opinion could be rejected due to specific and legitimate reasons that were supported by substantial evidence in the record. For example, the ALJ determined – based on her detailed review and analysis of the record – that Plaintiff was more limited than what Dr. Hernandez opined in that her ability to lift and carry is reduced by her pulmonary limitations. (AR

22.) Dr. Hernandez also only reviewed "two very abbreviated notes," Plaintiff's Adult Asthma Questionnaire (AR 216-17), and took a history from Plaintiff. (AR 22.) In contrast, the "weight of the record" supported the opinions by Drs. Pancho and Mitgang, and the reason why their analyses deserved significant weight was because of the overwhelming evidence in the record that reached similar conclusions. (*Id.*) As a result, the Court concludes that the ALJ's determination of the RFC is supported by substantial evidence here.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED.

The Clerk of the Court shall close this case.

IT IS SO ORDERED.

Dated: September 26, 2018

KANDIS A. WESTMORE
United States Magistrate Judge